UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHAD O'HARA, Individually and as | ) | |
| Next Friend of H.O., a Minor, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION NO. |
| | ) | |
| VS. | ) | 3:05-CV-1134-G |
| | ) | |
| GENERAL MOTORS CORPORATION, | ) | **ECF** |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion for summary judgment of the defendant General Motors Corporation ("GM" or "the defendant") on the claims asserted against it by the plaintiffs, Chad O'Hara and Michelle O'Hara, individually and as next friend of H.O., a minor ("the O'Haras" or "the plaintiffs"). *See generally* General Motors Corporation's Motion for Summary Judgment ("Motion for Summary Judgment"). For the reasons given below, the defendant's motion for summary judgment is granted.

Also before the court is the O'Haras' motion to continue ruling on GM's motion for summary judgment, and GM's motion to exclude or limit experts' opinions and motion to strike untimely disclosed opinions. For the reasons given below, the O'Haras' motion to continue is denied, GM's motion to exclude or limit experts' opinions is denied as moot, and GM's motion to strike untimely disclosed opinions is granted.

## I.  BACKGROUND

This suit arises out of an automobile accident. Plaintiffs' Original Petition and Request For Disclosure ("Petition") ¶ 8 (attached as exhibit A to Notice of Removal). The plaintiff Michelle O'Hara was driving a 2004 Chevrolet Tahoe with her 9-year old daughter, H.O., in the passenger seat. *Id.* While attempting to merge into traffic, Michelle O'Hara's Tahoe struck a guardrail, did a one-quarter roll, and came to rest on its passenger side. *Id.* During the roll, H.O. put her right hand out to catch herself from falling towards the window. *Id.* However, the tempered glass in the passenger side window shattered and H.O.'s hand and arm went through the glass and outside the vehicle. *Id.* As a result, H.O.'s hand and arm were degloved by the broken window and crushed by the vehicle. *Id.* ¶ 10.

The O'Haras seek monetary damages in this case on theories of strict liability and negligence. They allege that GM defectively designed, manufactured, and marketed the 2004 Chevrolet Tahoe. *Id.* ¶¶ 11-14. Specifically, the O'Haras assert

that the "2004 Chevy Tahoe in question was introduced into the stream of commerce [with] a window design defect that caused the window to shatter and allow[] [H.O.'s] hand and arm to go out the window and be degloved and crushed." *Id.* ¶ 12.  The plaintiffs also assert that GM failed "to warn purchasers or users of the Tahoe that the Tahoe's side windows might shatter and allow a portion of the passenger's body to go outside the vehicle," rendering the vehicle unreasonably dangerous as marketed. *Id.* ¶ 13.  The plaintiffs also complain that GM was negligent because it "committed acts of omission and commission in designing, testing, evaluating, marketing, and in failing to warn with regard to the Tahoe and its side windows".  *Id.* ¶ 15.

GM moves for summary judgment on two grounds.  First, GM asserts that the plaintiffs' design and marketing defect claims, which are predicated on the allegation that GM should have used glass-plastic[1] in the front passenger window instead of tempered glass,[2] are impliedly preempted by Federal Motor Vehicle Safety Standard ("FMVSS") 205, 49 C.F.R. § 571.205, which provides manufacturers of passenger

---

[1]     The term "glass-plastic glazing material" means a laminate of one or more layers of glass and one or more layers of plastic in which a plastic surface of the glazing faces inward when the glazing is mounted in a vehicle.  ANSI/SAE Z26.1-1996 at 1 (attached as exhibit G to Motion for Summary Judgment).

[2]     The term "tempered glass" means a single piece of specially treated sheet, plate, or float glass possessing mechanical strength substantially higher than annealed glass.  When broken at any point, the entire piece breaks into small pieces that have relatively dull edges as compared to those broken pieces of annealed glass. ANSI/SAE Z26.1-1996 at 2 (attached as exhibit G to Motion for Summary Judgment).

vehicles, like the Tahoe, the option of manufacturing the passenger side window with either tempered glass, glass-plastic, or laminated glazing[3].  Second, GM maintains, there is no evidence of any alleged defect in the seat belt system of the Tahoe, nor is there evidence that a seat belt was the cause in fact of the O'Haras' damages.[4]  The O'Haras have responded in opposition to GM's motion.

## II.  ANALYSIS

### A.  Evidentiary Burdens on Summary Judgment

Summary judgment is proper when the pleadings and evidence before the court show that no genuine issue exists as to any material fact and that the moving party is

---

[3]       The term "laminated glass" means two or more pieces of sheet, plate, or float glass bonded together by an intervening layer or layers of plastic material.  It will crack or break under sufficient impact, but the pieces of glass tend to adhere to the plastic.  If a hole is produced, the edges are likely to be less jagged than would be the case with ordinary annealed glass.  ANSI/SAE Z26.1-1996 at 1 (attached as exhibit G to Motion for Summary Judgment).

[4]       This ground was asserted by GM to clear up any confusion in the pleadings.  The O'Haras' original petition does not assert a claim for a defective seat belt system, but it appears there was an oversight in that document.  It has a point heading stating "Strict Liability for Defective Design, Manufacture and Marketing of *Seat Belt System*."  Original Petition at 3 (emphasis added).  Then, the text below this heading sets forth a strict liability claim for a window design defect.  *Id.* ¶¶ 11-14.  There is no mention of a defectively designed seat belt system.  *Id.*  It appears the plaintiffs used a form document, or a pleading from a prior lawsuit, as their template for this petition.  GM asserts this ground for summary judgment to bring finality to a confusing and potentially misleading claim.  For these reasons, the court does not recognize a claim for a defective seat belt system, but to the extent such a claim is asserted, will grant GM's motion for summary judgment on this ground.

entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).[5]  The movant makes

such a showing by informing the court of the basis of its motion and by identifying

the portions of the record which reveal there are no genuine material fact issues.

*Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986).  "[T]he substantive law will

identify which facts are material."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986).  A genuine issue of material fact exists "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving part[ies]."  *Id.*  The

pleadings, depositions, admissions, and affidavits, if any, must demonstrate that no

genuine issue of material fact exists.  FED. R. CIV. P. 56(c).

Once the movant makes this showing, the nonmovants must then direct the

court's attention to evidence in the record sufficient to establish that there is a

genuine issue of material fact for trial.  *Celotex*, 477 U.S. at 323-24.  To carry this

burden, the "opponent[s] must do more than simply show . . . some metaphysical

doubt as to the material facts."  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio

Corporation*, 475 U.S. 574, 586 (1986).  Instead, the nonmovants must show that the

evidence is sufficient to support a resolution of the factual issue in their favor.

*Anderson*, 477 U.S. at 249.

---

[5]      The disposition of a case through summary judgment "reinforces the
purpose of the Rules, to achieve the just, speedy, and inexpensive determination of
actions, and, when appropriate, affords a merciful end to litigation that would
otherwise be lengthy and expensive."  *Fontenot v. Upjohn Company*, 780 F.2d 1190,
1197 (5th Cir. 1986).

While all of the evidence must be viewed in a light most favorable to the nonmovants, *id.* at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovants' summary judgment burden. *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002) (citing *Little v. Liquid Air Corporation*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponents fail to establish the existence of an element essential to their case and as to which they will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

B. <u>Federal Preemption of the Design and Marketing Defect Claims</u>

Article VI of the United States Constitution provides that the laws of the United States "shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. Art. VI, cl. 2 (the "Supremacy Clause"). The Supremacy Clause empowers Congress to preempt state law. *Louisiana Public Service Commission v. Federal Communications Commission*, 476 U.S. 355, 368 (1986). Federal preemption of state law can occur in three situations: (1) where Congress explicitly preempts state law; (2) where preemption is implied because Congress has occupied the entire field; and (3) where preemption is implied because there is an actual conflict between federal and state law. *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 299-300 (1988). GM asserts

- 6 -

that the O'Haras' claims are impliedly preempted because there is a conflict between

federal and state law.  *See* Brief in Support of Motion for Summary Judgment at 2-14.

Where federal preemption is claimed because a state law conflicts with

congressional action, federal law preempts the conflicting state law when compliance

with both state and federal law is a physical impossibility, *Florida Lime* & *Avocado*

*Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963), or where the state law "stands as

an obstacle to the accomplishment and execution of the full purposes and objectives

of Congress."  *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941).  GM asserts that the

plaintiffs' claims are preempted under the latter ground.  *See* Brief in Support of

Motion for Summary Judgment at 2-14.

1.  *Preemption Clause and Savings Clause*

The National Traffic and Motor Vehicle Safety Act ("the Safety Act"), under

which the FMVSS regulations are promulgated, contains both a preemption clause

that provides that a State may establish "a [safety] standard applicable to the same

aspect of performance of a motor vehicle . . . only if the standard is identical to the

[Federal safety] standard," and a savings clause, which provides that "[c]ompliance

with a [Federal] motor vehicle safety standard . . . does not exempt a person from

liability at common law."  49 U.S.C. §§ 30103(b),(e).  The tension between these

provisions led to a conflict among the circuits regarding preemption of state common

law claims that seek to impose tort liability on automobile manufacturers who have

exercised design options specifically preserved under FMVSS regulation.  GM asserts that, after the Supreme Court decided *Geier v. American Honda Motor Co., Inc.*, 529 U.S. 861 (2000), this conflict no longer exists.  Brief in Support of Motion for Summary Judgment at 4-5.  The court agrees.

In *Geier*, the Supreme Court found an irreconcilable conflict between FMVSS 208 and the petitioner's claim that Honda, which selected one of FMVSS 208's no-airbag, passive-restraint options, should nonetheless have equipped its automobile with airbags.  *Geier*, 529 U.S. at 865.  Specifically, Honda chose to utilize the option of equipping the vehicle with a passive shoulder belt, instead of the option to equip the vehicle with an airbag.  *Id.*  The Court concluded that since FMVSS 208 was deliberately designed to provide manufacturers with options, a state court action alleging that the manufacturer was compelled to choose one of those options over the others available under the regulation frustrated the federal regulatory scheme and was, therefore, preempted by the federal regulation.  *Geier*, 521 U.S. at 900-01.

In this case, the O'Haras claim that GM should not have designed the 2004 Chevrolet Tahoe with a front passenger window manufactured from tempered glass. Therefore, the issues before this court are (1) whether FMVSS 205 preserves the option to manufacture the front passenger window of the 2004 Chevrolet Tahoe with tempered glass; and (2) if FMVSS 205 preserves the tempered-glass option, whether

state law stands as an obstacle to the accomplishment and execution of the full

purposes and objectives of Congress.

2. *FMVSS 205 Preserves the Option of Using Tempered Glass*

FMVSS 205 provides that "[g]lazing materials for use in motor vehicles must

conform to ANSI/SAE Z26.1-1996."  49 C.F.R. § 571.205(S5.1).  ANSI 26.1-1996,

also titled "American National Standard for Safety Glazing Materials for Glazing

Motor Vehicles and Motor Vehicle Equipment Operating on Land Highways -- Safety

Standard," provides:

> Except for special requirements for specified locations,
> safety glazing materials of seven general types can meet
> some or all requirements detailed in this standard.  All
> seven types are commercially feasible today.  Each of them
> possesses its own distinctive safety characteristics.  The
> seven types are listed below and are described in Section I.
>
> (1)   Laminated Glass
> (2)   Glass-Plastic Glazing Material
> (3)   Tempered Glass
> (4)   Plastic
> (5)   Multiple Glazed Unit (Class 1
>         and Class 2)
> (6)   Bullet-Resistant Glazing
> (7)   Bullet-Resistant Shield . . .

ANSI/SAE Z26.1-1996 at ii (attached as exhibit G to appendix filed in support of

motion for summary judgment at 416).  The standard sets out thirty-two test

specifications.  *Id.* at 11-32.  The standard requires certain groupings of test

specifications to be met before a particular safety glazing material is permitted to be

used in a specified location on the vehicle.  *Id*. at 7-11.  ANSI/SAE Z26.1-1996 does not expressly state that tempered glass is a permitted option to be used on the front passenger window of a 2004 Chevrolet Tahoe.  *See generally id.*  However, both parties agree that the standard permits the tempered glass option for this use.  *See* Affidavit of Kon-Mei Ewing (attached to the appendix filed in support of the defendant's Motion for Summary Judgment at 1) ¶¶ 32, 33 ("The . . . standard incorporated into the applicable versions of FMVSS 205 specifically provides that passenger cars, like the Chevrolet Tahoe, can be equipped with side windows made from tempered glass."); Plaintiffs' Brief in Support of Their Response in Opposition to General Motors Corporation's Motion for Summary Judgment ("Plaintiffs' Response") at 30 - 31 ("Table 1 . . . specifies three types or items of glazing material that may be used and the tests each type or item must pass to qualify for use in side windows: . . . tempered glass [must pass tests 1, 2, 6, 7, and 18] . . .").

> 3.  <u>State Law Stands as an Obstacle to the Accomplishment and</u>
> <u>Execution of the Full Purposes and Objectives of Congress</u>

Because FMVSS 205 does preserve the option to use tempered glass on the front passenger window of the 2004 Chevrolet Tahoe, the O'Haras' design defect claim will be federally preempted if state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.  See *Hines*, 312 U.S. at 67.  Here, the O'Haras assert that using tempered glass on front passenger windows is a defective design under Texas tort law.  Therefore, if the full

purposes and objectives of Congress are hindered by a ban against using tempered glass on the front passenger window, the O'Haras' design defect claim will be federally preempted.

The stated purposes of FMVSS 205 are (1) to reduce injuries resulting from impact to glazing surfaces, (2) to ensure a necessary degree of transparency in motor vehicle windows for driver visibility, and (3) to minimize the possibility of occupants being thrown through the vehicle windows in collisions.  49 C.F.R. § 571.205(S2). The court will examine FMVSS 205's history to determine whether preserving the option to use tempered glass in side passenger windows furthers Congress's full purposes and objectives.

In 1966, Congress passed the Safety Act, and two years later the National Highway Traffic Safety Administration ("NHTSA") passed FMVSS 205, which incorporated ANSI Z26.1.  *See id.* at § 571.205(S5.1).  In the years since the passage of the Safety Act and FMVSS 205 incorporating ANSI Z26.1, NHTSA has continued to study and modify the standard.

In 1995, NHTSA's Advanced Glazing Research Team published a report stating that research "should be continued to more fully evaluate the safety implications of alternative glazing systems."  Ejection Mitigation Using Advanced Glazing[:] A Status Report, November 1995 at 11-3 (attached as exhibit C to appendix filed in support of Motion for Summary Judgment at 262).

In 1999, the agency published "Ejection Mitigation Using Advanced Glazing: Status Report II," which included the agency's finding that "impacts into tempered glass resulted in lower [neck] shear loads and moments than those into advanced glazings." Ejection Mitigation Using Advanced Glazing: Status Report II at viii (attached as exhibit D to appendix filed in support of Motion for Summary Judgment at 270).

In August 2001, the NHTSA's "Final Report" on "Ejection Mitigation Using Advanced Glazing" repeated the agency's findings regarding evidence of lower potential for neck injury with tempered glass compared to the alternative glazings. *See* Ejection Mitigation Using Advanced Glazing:  Final Report (attached as exhibit E to appendix filed in support of Motion for Summary Judgment at 339).  The agency stated that it was "extremely reluctant to pursue a requirement that may increase injury risk for belted occupants to provide enhanced safety benefits primarily for unbelted occupants, by preventing their ejection from the vehicle." *Id.* at x (appendix at 348).  In other words, the NHTSA considered removing the tempered glass option, and it expressly chose to preserve that option because banning the use of tempered glass might increase risk -- of injuries resulting from impact to glazing surfaces -- for belted occupants while decreasing risk -- of ejection -- for unbelted occupants.  After detailed investigation, the NHTSA determined that the best course, to further

FMVSS 205's purposes, was to preserve the option to use tempered glass and the advanced glazing.

A Texas tort law requiring liability based on a manufacturer's choice to use the tempered-glass option is an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.  Therefore, the O'Haras' state law claim for design defect is federally pre-empted, and summary judgment in favor of GM is granted on this claim.

C.  Federal Law Preempts the O'Haras' Marketing Defect Theory

The plaintiffs also claim that GM failed to warn of the design defect.  In response, GM asserts that the plaintiffs' failure to warn claim is also preempted because "with no underlying defect, no warning is required."  The Fifth Circuit Court of Appeals has not addressed this issue, but the Eleventh Circuit has reached the result contended for by GM.  See *Griffith v. General Motors Corporation*, 303 F.3d 1276, 1282 (11th Cir. 2002) (finding no defect about which to warn because the plaintiffs' defective-design claim is preempted by FMVSS 208), *cert. denied*, 538 U.S. 1023 (2003); *Irving v. Mazda Motor Corp.*, 136 F.3d 764, 769-70 (11th Cir.) (finding no defect about which to warn because the plaintiffs' defective-design claim is preempted, and the plaintiffs tied the claims of defective design and failure to warn together), *cert. denied*, 525 U.S. 1018 (1998).  Because this claim is tied to the

plaintiffs' claim of defective design,[6] it too is preempted.  Summary judgment in favor

of GM is granted on the plaintiffs' failure to warn claim.

D.  Plaintiffs' Claims of Implementation and
Installation Are Not Considered

The O'Haras, in their response to GM's motion for summary judgment, take

the position that they are actually suing GM on theories that the 2004 Chevrolet

Tahoe was defective based on the method by which the tempered glass window was

"installed" or "implemented," and that the Tahoe was not in compliance with

FMVSS 205.  *See* Response at 38-43.  GM responds that an unpleaded theory cannot

be raised for the first time in response to a motion for summary judgment.  General

Motors Corporation's Reply to Plaintiffs' Response to General Motors Corporation's

Motion for Summary Judgment at 2-3, 13-17.

The plaintiffs' original complaint averred:

> At the time the 2004 Chevy Tahoe in question was
> introduced into the stream of commerce, it contained a
> window design defect that caused the window to *shatter and*
> *allowed [H.O.'s] hand and arm to go out the window* and be
> degloved and crushed.  This defect rendered the side

---

[6]      The O'Haras' petition links their failure to warn claim to their defective
design claim.  The petition brings these claims under the same point heading entitled:
"Strict Liability for Defective Design, Manufacture and Marketing of [Window
Design Defect]" Petition at 3.  Moreover, the petition alleges "there was a failure to
warn purchasers or users of the Tahoe that the Tahoe's side windows might shatter
and allow a portion of the passenger's body to go outside the vehicle.  Such *defect* was
known or, by the application of reasonably developed human skill and foresight,
should have been known to the Defendant.  This *defect* rendered the side windows
unreasonably dangerous as marketed." Petition ¶ 13 (emphasis added).

windows unreasonably dangerous as designed, taking into consideration the utility of the system and the risk involved in its use.  Safer alternative designs existed which, in all reasonably probability, *would have prevented or significantly reduced the risk of shattering and permitting a portion of the passenger's body to go outside the vehicle*, which alternative designs would not have substantially impaired the window's utility, and which was economically and technologically feasible at the time the subject vehicle left the control of the Defendant by the application of existing or reasonably achievable scientific knowledge.  Said window design defect was the producing cause of the injuries in question.

Petition ¶ 12 (emphasis added).  It is unclear whether the O'Haras' installation and

implementation theories fit within their petition as pleaded

However, the court's scheduling order specified that the O'Haras' expert

disclosures and reports were due no later than November 4, 2005.  Order Establishing

Schedule and Certain Pretrial Requirements ¶ 4 (filed June 27, 2005).[7]  In these

expert reports, the O'Haras did not disclose any theory other than the theory that the

window should not have been made with tempered glass.  *See* Plaintiffs' Expert Report

by Stephen A. Batzer ("Batzer") at 4 (attached to supplemental appendix filed in

support of motion for summary judgment at 558) (stating in the results and

conclusions section "Had this 2004 Chevrolet Tahoe been designed and produced

---

[7]      A scheduling order, once entered, should be modified only for good cause.  Rule 16(b), F.R. Civ. P.  See *Reliance Insurance Company v. Louisiana Land & Exploration*, 110 F.3d 253, 257 (5th Cir. 1997) (trial court did not abuse its discretion in refusing to allow supplementation of expert report after deadline in scheduling order).  The O'Haras have not urged any good cause for modification of the scheduling order in this case.

with a laminated side glazing window system designed for occupant retention, [H.O.]
would not have been partially ejected and would not have suffered her injuries.").
Additionally, Batzer's expert report provides five items attached to its appendix.  *Id*.
at 5.  These items all focus on the tempered glass versus laminated glass analysis.  For
example, the Automotive Glazing Technical Synopsis states:  "the use of tempered
glass over laminated glass does not minimize the possibility of occupant ejection
during a collision.  Tempered glass is inferior to laminated glazing in meeting this
stated purpose of the standard."  Automotive Glazing Technical Synopsis at 1
(attached to supplemental appendix filed in support of motion for summary judgment
at 560).  Moreover, Batzer wrote an "Automotive Glazing Technical Synopsis -- GM
Extract" which, in its introduction, states:

> For the purposes of litigation, GM has produced various
> documents covering its historical involvement with the
> choice of *advanced glazing vs. tempered glass* in side and rear
> lites.  Within this extract is a summary of items found from
> those documents.  Therefore, this summary gives a
> documented historical perspective of what was done by,
> and known to, GM's engineering staff from the late 1960s
> to the present day. . . ."

Automotive Glazing Technical Synopsis -- GM Extract, Stephen A. Batzer, at 1
(attached to supplemental appendix filed in support of Motion for Summary
Judgment at 582) (emphasis added).  Nothing in Batzer's reports suggests that the
O'Haras' theory of liability is based on the method by which the tempered glass

- 16 -

window was "installed" or "implemented," or that the Tahoe was not in compliance with FMVSS 205.

The O'Haras also produced an expert report by Herbert Yudenfriend ("Yudenfriend"), which was prepared on October 28, 2005, prior to the court's deadline for production of expert reports.  Letter by Herbert Yedenfriend at 1 (attached to supplemental appendix filed in support of motion for summary judgment at 601).  This report concluded that the O'Haras would not have suffered injuries if the 2004 Chevrolet Tahoe had a front-passenger-side window manufactured from laminated glass, bilaminate window glass, heat strengthened laminated glass, or high penetration resistance laminated glass.  *Id.* ¶ 6.  There is no mention in Yudenfriend's expert report of a theory of liability based on the method by which the tempered glass window was "installed" or "implemented," or that the Tahoe was not in compliance with FMVSS 205.  *See id.*

For the above reasons, it appears to the court that the O'Haras have asserted their theories -- that the way the tempered glass was installed or implemented was defective or not in compliance with FMVSS 205 -- for the first time in their response to GM's motion for summary judgment.  Because the O'Haras never pleaded these legal theories, they cannot raise them in a response to a motion for summary judgment.  *Cutrera v. Board of Supervisors of Louisiana State University*, 429 F.3d 108, 113 (5th Cir. 2005) (citing *Fisher v. Metropolitan Life Insurance Company*, 895 F.2d

1073, 1078 (5th Cir. 1990)).  Accordingly, these novel theories of liability -- that the way the tempered glass was installed or implemented was defective or not in compliance with FMVSS 205 -- will not be considered by the court.

E.  Motion to Continue Ruling on GM's
Motion for Summary Judgment

The O'Haras request the court to defer ruling on GM's motion for summary judgment until GM produces tests, research program, and study referred to in paragraphs 20 and 21 of the affidavit of Kon-Mei Ewing.  The O'Haras assert that GM relies on these tests, research program, and study for summary judgment, claiming that they show that laminated glass is not better than tempered glass in mitigating ejections and that tempered glass is still the best for side windows. Plaintiffs' Motion to Continue Ruling on GM's Motion for Summary Judgment at 2. Because the court finds that the O'Haras' claim is preempted by federal law, the evidence showing laminated glass is a safer alternative design is irrelevant to the outcome of this motion.

The O'Haras also assert that these tests, research program, and study are relevant to the GM's theory of preemption.  *Id.*  It is not necessary for the court to consider this evidence to determine whether Texas tort law requiring liability based on a manufacturer's choice to use the tempered-glass option is an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.  *See*

discussion in part B, *supra*.  For these reasons, the O'Haras' motion to continue ruling on GM's motion for summary judgment is denied.

### F. *Daubert*[8] Motion to Exclude or Limit Experts' Opinions

GM filed this *Daubert* motion to exclude expert opinions on the causation element of the O'Haras' design defect claims and to exclude opinions from the O'Haras' experts regarding the design of doors, mirrors, window frames and other components of the vehicle, or in the alternative, strike those opinions related to the design of the doors, mirrors or window frames because they were not timely disclosed or pleaded.

#### 1. *Daubert Motion to Exclude or Limit Opinions from Plaintiffs' Experts*

Because GM has prevailed on its motion for summary judgment on all of the O'Haras' claims in this case, this motion is denied as moot.

#### 2. *Motion to Strike Untimely Disclosed Opinions*

The court will strike the opinions related to the design of the doors, mirrors or window frames.  As mentioned above, the O'Haras did not disclose any theory -- prior to their response to this summary judgment motion -- other than the theory that the window should not have been made with tempered glass.  *See* discussion part D, *supra*.  The court will strike the expert opinions related to the design of the doors, mirrors, or window frames because they were not timely disclosed in this case.

---

[8]        *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

III.  <u>CONCLUSION</u>

For the reasons given above, GM's motion for summary judgment is

**GRANTED**.  The O'Haras' claims against GM are **DISMISSED** with prejudice.

The O'Haras' motion to continue ruling on GM's motion for summary

judgment is **DENIED**.

GM's *Daubert* motion to exclude or limit opinions from the O'Haras' experts is

**DENIED** as moot.

GM's motion to strike untimely disclosed opinions is **GRANTED**.

To the extent the O'Haras assert a claim for a defective seat belt system,

summary judgment is **GRANTED** in GM's favor and this potential claim is

**DISMISSED** with prejudice.

**SO ORDERED.**

April 25, 2006.

A. JOE FISH
CHIEF JUDGE